**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicky Eldridge, | No. CV-22-08007-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Nicky Eldridge seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

Nicky Eldridge ("Plaintiff") was born in February 1955. He has at least a high school education. Plaintiff previously worked as a maintenance mechanic at Southern California Gas Company. He stopped working around May 1, 2017. In the two years after 2017, Plaintiff accrued only minimal earnings (approximately $250 per year in 2018 and 2019).

On September 18, 2019, Plaintiff applied for disability insurance benefits, alleging disability beginning May 1, 2019. His claim was denied initially and upon reconsideration, and a hearing was held by telephone before an ALJ on November 13, 2020. On December 22, 2020, the ALJ denied Plaintiff's claim. The Appeals Council denied Plaintiff's request for review on November 24, 2021. On January 19, 2022, Plaintiff sought review by this Court. (Doc. 1.).

## DISCUSSION

### I. Legal Standard

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Only issues that are argued specifically and distinctly in a party's opening brief are reviewed. *Id.* Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the

standard of review is highly deferential." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Harmless error principles apply in the Social Security Act context. *Molina*, 674 F.3d at 1115. An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate non-disability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## II.     Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2021, and that Plaintiff has not engaged in

substantial gainful activity since May 1, 2017. (AR at 46.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder. (AR at 47.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 48.)

At step four, the ALJ found that the Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), except the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently, can stand and/or walk for 6 hours of an 8-hour workday, and can sit for 6 hours of an 8-hour workday. Plaintiff can frequently climb, stoop, crouch, crawl, kneel, and balance. He can also understand, remember, and carry out simple instructions and occasionally remember and carry out detailed and complex instructions. The ALJ further found that Plaintiff is unable to perform any past relevant work.

At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform.

**III. Analysis**

**A. Plaintiff's Symptom Testimony**

The ALJ's finding as to the intensity, persistence, and limiting effects of Plaintiff's symptoms ("the credibility finding") is supported by substantial evidence. In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and if so, absent evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "General findings are insufficient." *Id*. The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 50.) Nevertheless, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ offered three types of inconsistencies: (1) the medical evidence did not support the severity of Plaintiff's subjective allegations, (2) Plaintiff's rejection of treatment was inconsistent with subjective limitations and reported pain, and (3) Plaintiff's described daily activities were not consistent with the degree of disabling symptoms alleged. (AR at 49-51.) These are clear, convincing, and specific reasons for discrediting Plaintiff's testimony about the severity of his symptoms.

Plaintiff argues that the ALJ failed to properly consider nearly all of the factors he was required to consider at step two of the credibility inquiry. The relevant regulation states:

> [f]actors relevant to your symptoms such as pain, which we will consider, include: (i) your daily activities; (ii) the location, duration, frequency, and intensity of your pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) any measures you use or have used to relieve your pain or other symptoms . . . ; and (vii) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii). The ALJ adequately addressed each of these factors and discounted Plaintiff's symptom testimony accordingly. The Court addresses the factors raised by Plaintiff, and the inconsistencies recognized by the ALJ, below.

*Medical Evidence:* The ALJ determined that the Plaintiff's alleged symptoms were not entirely consistent with the medical evidence. In reaching this conclusion, the ALJ relied primarily on a comprehensive medical evaluation that the Plaintiff underwent in February 2020. (*See* AR at 371-77.) At that evaluation, Plaintiff's symptoms were almost entirely normal. The ALJ reviewed several aspects of the evaluation that did not indicate any problems with Plaintiff's health, such as Plaintiff's report that his medical concerns do not significantly impact his daily living (AR at 372), normal gait and station (AR 373), normal balance (AR 373), no pain with palpation of the back (AR 374), and no fibromyalgia tender points (AR at 375).

Notably, the February 2020 examination did not assess Plaintiff's spinal range of motion because he "report[ed] he had a hernia repair in June" and "[was] unable to do any range of motion of his back because of back pain." (AR at 374.) Nevertheless, the examining physician opined that Plaintiff's conditions would not impose any limitations. (AR at 376.) Although Plaintiff testified that he was in a lot of pain and rated his pain as going from a "five to a ten," the vast majority of the February 2020 examination revealed normal structural findings and noted that Plaintiff felt no pain with several different

manipulations. (AR at 72, 374.) The ALJ recognized Plaintiff's testimony about his pain levels but contrasted it with several normal findings in his consultative evaluation. (AR at 50-51.) In light of the February 2020 medical evaluation, the ALJ's finding that the medical evidence was somewhat inconsistent with Plaintiff's testimony is reasonable.

Plaintiff's August 2020 MRI results do not undermine this determination. An August 2020 MRI of the Plaintiff's back reviewed marked disc space narrowing at L4-5 and 5-6 and disc protrusions at L3-4 and L5-S1, with central canal stenosis at L3-4. (AR at 51.) Plaintiff alleges that the ALJ erred in concluding that despite these MRI results, he could still perform medium work, arguing that such a finding is an "improper lay judgment on medical imaging." (Doc. 15 at 10.) The ALJ's opinion contains no such judgment. Instead, the ALJ recognized that although the MRI demonstrated some degenerative changes, Plaintiff refused to see an orthopedic specialist to discuss the images and potential changes. (AR at 51.) As such, the provider following up with Plaintiff on the MRI report was "not sure how to help him if he refuses any kind of referral." (AR at 549.) Further, at the follow up visit the physician noted that the Plaintiff was "not having any new or worsening problem." (*Id.*) The ALJ reasonably concluded that the consultative examination was inconsistent with Plaintiff's testimony and the August 2020 MRI, without further examination or explanation, does not compel a different conclusion.

*Rejection of Treatment:* The ALJ similarly determined that Plaintiff's rejection of treatment was inconsistent with his described severity of symptoms. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113. Here, the ALJ stated that "treatment records from September 2020 indicated that the claimant declined pain management, orthopedic surgery, and physical therapy referrals." (AR at 51.)

To be sure, Plaintiff offers explanations for some of his failures to pursue or accept certain treatments. As for opioid medication specifically, Plaintiff explains that he avoids opioids because he previously had a negative experience with Vicodin and does not want

to risk addiction. (AR at 79.) As for physical therapy, Plaintiff explained that he continues to use exercises he has previously learned and does not want to attend new sessions to re-learn the exercises. (AR at 74; 84.) Plaintiff further explained that he does not want to do back surgery because of the risk of paralysis. (AR at 85.) Even assuming these specific reasons are legitimate, Plaintiff does not offer reasons for declining other types of pain management aside from Vicodin or declining to visit an orthopedic specialist to review his MRI results and receive other treatment options.

After the August 2020 MRI, his provider offered him several referrals, which he did not pursue. (AR at 549.) Importantly, his provider informed him that "he should go and see an orthopedic surgeon to discuss changes in his older imaging versus his new imaging," explaining that such an appointment is necessary "if he does not want surgery and does not want any type of pain procedures." (*Id.*) Plaintiff refused, however, demonstrating that he refused a wider range of treatment than he offered explanation for, including other types of pain management and further recommendations from a specialist. It was thus reasonable for the ALJ to conclude that Plaintiff's testimony of significant and persistent pain was inconsistent with his failure to continue pursuing treatment in some capacity after receiving the MRI results and to discount his testimony accordingly.

*Daily Activities:* The ALJ reasonably found that Plaintiff's described daily activities were inconsistent with the limitations he described in his testimony. In his briefing, Plaintiff argues that his described activities "do not reflect a person who can lift and carry 50 pounds occasionally and 25 pounds frequently." (Doc. 15 at 11.) However, the precise question regarding Plaintiff's credibility is whether the ALJ reasonably determined there were inconsistencies between Plaintiff's symptom testimony and the described daily activities. Plaintiff points to specific consistencies between his testimony about daily activities and symptoms.

Plaintiff stated at his consultative evaluation that his symptoms did not impose any significant difficulty on his daily activities. (AR at 372.) He also stated that he could sit, drive, cook, go grocery shopping regularly, and complete light housework. However,

Plaintiff indicated on a function report in October 2019 that he had difficulty squatting, sitting, kneeling, bending, stair climbing, and completing tasks. (AR at 255.) "Even if the claimant experiences some difficulty or pain, [his] daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Plaintiff's previous report that his impairments imposed no significant difficulty on his daily activities is at least inconsistent with other testimony that he was always in extreme pain and could not sit down. (AR at 72-73.) Because the ALJ identified inconsistencies between the Plaintiff's ability to perform daily activities and described symptoms, his decision to discredit Plaintiff's symptom testimony was reasonable.

*Location, Duration, Frequency and Intensity of Pain and Precipitating and Aggravating Factors:* Plaintiff asserts that the ALJ improperly considered these factors by failing to explicitly explain why he did not offer a sit/stand limitation in light of Plaintiff's testimony that housework and standing can aggravate his pain. (Doc. 15 at 11-12.) The ALJ is not required to offer an explicit explanation for declining to add this limitation and a failure to give one is not an indication that the ALJ failed to consider the factor. *Magallanes v. Bowen*, 881 F.2 747, 755 (9th Cir. 1989) ("We are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Here, the ALJ acknowledged Plaintiff's testimony about his pain scale and difficulties with sitting or standing. However, as noted above, the ALJ reasonably found these aspects of his symptom testimony inconsistent with his alleged daily activities, the objective medical evidence, and Plaintiff's failure to seek further treatment. As such, the ALJ reasonably discredited the testimony.

*Work History:* Plaintiff's steady work history does not bear on the inconsistencies described by the ALJ and consequently does not affect the ALJ's credibility determination. Plaintiff cites the relevant regulation and case law stating that an ALJ must consider a claimant's work history when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3); *Simmons v. Colvin*, No. ED CV 15-01865, 2016 WL 6436829 (C.D. Cal. Oct. 31, 2016).

The regulation states "[w]e will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 404.1529(c)(3). The only case Plaintiff cites to argue that a prior work record bears on the credibility finding is a district court case affirming an ALJ's determination that a claimant's "spotty" or "meager" work history undermined her credibility at this stage of the analysis. *Simmons*, 2016 WL 6436829, at *8. While it may be that "[e]vidence of a poor work history is a clear and convincing reason to discredit plaintiff's credibility," Plaintiff provides no case law suggesting that a positive or consistent work history alone can negate other inconsistencies in Plaintiff's symptom testimony. *See id.*

As noted by the Plaintiff, the "credibility" finding at issue is perhaps an imprecise shorthand for whether the claimant's self-described limitations are consistent with the evidence. SSR 16-3P, 2017 WL 5180304, at *2 n.1 (Oct. 25, 2017). And, Plaintiff does not explain how his significant work history relates to or undermines the inconsistencies in the record identified by the ALJ. Therefore, even if the ALJ was required to specifically address Plaintiff's work history in the opinion, failure to do so was harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (finding that ALJ erred when discrediting claimant's symptom testimony by relying on an impermissible assumption, but error was harmless in light of "all the other reasons given by the ALJ for [claimant's] lack of credibility"). Plaintiff fails to show how the ALJ's assessment of his work history, even if it made him more "credible" in a generalized sense, negate the inconsistencies that form the basis of his credibility finding.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the ALJ dated December 22, 2020, is **AFFIRMED**. The Clerk of Court is directed to enter final judgment consistent with this Order and to close the case.

Dated this 5th day of July, 2023.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge